UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMAR DUVAN SIERRA CARVAJALINO,<br><br>              Petitioner,<br><br>     v.<br><br>CHRISTOPHER J. LAROSE, et al.,<br><br>              Respondents. | Case No.: 25-cv-03502-DMS-DDL<br><br>**ORDER GRANTING PETITION** |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1). Respondents filed a Return and Petitioner filed a Traverse. (Return, ECF No. 4; Traverse, ECF No. 5). After reviewing the briefs, the Court finds this matter is suitable for decision without oral argument. S.D. Cal. Civ. R. 7.1(d)(1); *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (holding that an evidentiary hearing is not necessary when deciding only questions of law). For the following reasons, the Court grants the Petition.

## I.     BACKGROUND

Petitioner, a native and citizen of Colombia, fled the country due to sex-based violence and discrimination. (Pet. ¶¶ 15–16). On December 4, 2023, Petitioner arrived at the San Ysidro Port of Entry, expressing a fear of returning home, and was detained. (*Id.*

¶ 16). On December 6, 2023, Petitioner was charged as being subject to removal, issued a notice to appear before an Immigration Judge ("IJ") in San Francisco in July 2025, and released "on an Order of Release on Recognizance." (*Id.* ¶¶ 17–18; Pet. Ex. F at 9). Thereafter, Petitioner traveled to the San Francisco Bay Area, where he eventually met his life-partner. (Pet. ¶ 19; *see* Pet. Ex. B at 1). In December 2024, Petitioner filed an application for asylum and withholding of removal. (Pet. ¶ 20). On June 17, 2025, Petitioner received an employment authorization document. (*Id.* ¶ 21; Pet. Ex. D). On August 8, 2025, Petitioner appeared for his initial hearing at the San Francisco Immigration Court. (Pet. ¶ 22). Counsel for the Department of Homeland Security ("DHS") made an oral motion to dismiss Petitioner's case due to "a change in circumstances." (Pet. Ex. E at 1). The IJ declined to adjudicate the motion and instead gave Petitioner ten days to retain legal counsel and respond. (Pet. ¶ 22; *Id.* at 1–2). However, immediately after exiting the courtroom, Petitioner was approached by Immigration and Customs Enforcement Officers who handcuffed his hands and ankles, before leading him to the basement. (Pet. ¶ 23). Shortly thereafter, an attorney from the Justice and Diversity Center of the San Francisco State Bar filed a *pro se* opposition to the Government's motion on Petitioner's behalf. (*Id.* ¶ 24). On August 12, 2025, Petitioner was transferred to the Otay Mesa Detention Center. (*Id.* ¶ 25).

On September 4, 2025, Petitioner's immigration court attorney filed a motion for a bond and custody redetermination, asking that Petitioner be released on conditional parole. (*Id.* ¶ 27). On September 11, 2025, the Government filed an opposition, asserting that Petitioner is an applicant for admission and therefore, the immigration court does not have jurisdiction over his custody. (*Id.* ¶ 27; Pet. Ex. F at 2). The following day, the immigration court denied Petitioner's custody redetermination motion because the court "lacks authority to redetermine the bond pursuant to Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)." (Pet. Ex. G at 1). On September 26, 2025, the IJ declined to adjudicate the Government's motion to dismiss because they had "failed to articulate which regulation they are proceeding under, and . . . failed to articulate that circumstances of the case have

changed to such an extent that continuation is no longer in the best interest of the government." (Pet. Ex. E at 1). On October 24, 2025, the Government filed a motion to pretermit Petitioner's protection applications, asserting that Petitioner is subject to the Asylum Cooperative Agreement between the United States and Honduras. (Pet. ¶ 32). Petitioner's immigration court attorney has filed an opposition raising constitutional and statutory rights. (*Id.*). On November 26, 2025, Petitioner's immigration court attorney filed a second motion for a bond and custody redetermination, arguing that Petitioner is a member of the *Bautista* class and therefore eligible for a bond hearing. (*Id.* ¶ 33); *see Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Petitioner remains detained at the Otay Mesa Detention Center with immigration court proceedings pending. (Pet. ¶ 34).

Petitioner argues that he is unlawfully detained in violation of his constitutional and statutory rights under the Fifth Amendment Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). (*Id.* ¶¶ 51–76). Respondents maintain that Petitioner is lawfully detained under 8 U.S.C. § 1225 and not eligible for relief as part of the *Bautista* class. (Return 10–17). Petitioner requests (1) a declaration that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and the APA; (2) a writ of habeas corpus ordering the immediate release of Petitioner or alternatively, a custody hearing; (3) an order enjoining Respondents from transferring Petitioner outside of this District without prior approval; (4) attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other basis justified under law; and (5) any other relief the Court deems just and proper. (Pet. 26–27).

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A petitioner prevails in his petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United States. *Id.* § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III. DISCUSSION

### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction per 8 U.S.C. § 1252(b)(9) and (g). (Return 6–10). The Court has previously considered and rejected this argument. *See Fanfan v. Noem*, No. 25cv3291 DMS (BJW), 2025 WL 3563739, at *4 (S.D. Cal. Dec. 12, 2025); *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, ECF No. 7 at 3–4 (S.D. Cal. Oct. 30, 2025); *Garcia v. Noem*, --- F. Supp. 3d ---, 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025). Based on the reasoning of those cases, the Court again rejects this argument.[1]

### B. Procedural Due Process Claim

Petitioner argues that the purported revocation of his conditional parole and subsequent detention without notice or an opportunity to be heard violate the Due Process Clause. (Pet. ¶¶ 62–73); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (noting that "release on recognizance" is another name for conditional parole); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) ("release on recognizance is a form of conditional parole from detention." (citation modified) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025))); *Fanfan*, 2025 WL 3563739. The Court agrees with Petitioner.

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This protection extends to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693

---

[1] In a footnote, Respondents urge the Court to require Petitioner to exhaust his administrative remedies. Like the jurisdictional argument, the Court has considered and rejected this argument. *Fanfan v. Noem*, No. 25cv3291 DMS (BJW), 2025 WL 3563739, at *4 (n.2) (S.D. Cal. Dec. 12, 2025); *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025) (finding exhaustion would be futile in light of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025)); *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *9–10 (D. Nev. Sept. 17, 2025) (same). The Court stands on its previous decisions on this issue, as well.

(2001); *see Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). In order to prevail on a procedural due process claim, Petitioner must have been "deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022); *see Paul v. Davis*, 424 U.S. 693, 702 (n.3) (1976) (confirming due process claims brought under the Fifth and Fourteenth Amendments are analyzed under the same standard). If there is a liberty interest at stake, the Court must evaluate what process is due, considering (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, while the Government's initial decision to release or detain Petitioner might have been within its discretion, the "decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citation modified) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Thus, Petitioner has a protected liberty interest in remaining out of custody and the Court must next consider the *Mathews* factors. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *3 (S.D. Cal. Nov. 3, 2025); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025); *Sanchez v. LaRose*, No. 25-cv-2396-JES-MMP, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *Alvarenga Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2817795, at *4–5 (E.D. Cal. Oct. 3, 2025); *Pinchi*, 792 F. Supp. 3d at 1032; *Romero v. Kaiser*, No. 22-CV-02508-TSH, 2022 WL 1443250, at *3 (N.D. Cal. May 6, 2022); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *2–3 (N.D. Cal. Mar. 1,

2021); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020).

### 1. Interest Affected

The first *Mathews* factor considers the private interest affected by the Government's action. Here, Petitioner argues that the summary revocation of his parole and his continued detention violate his right to be "free of bodily restraint." (Pet. ¶ 70). Indeed, the Supreme Court has held that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As discussed previously, district courts within the Ninth Circuit have consistently held "that if DHS has released a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025). The Court agrees and this factor therefore weighs in favor of Petitioner.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor considers the risk of an erroneous deprivation of the affected interest through the current procedures, and the probable value of any additional safeguards. Here, Petitioner argues that revocation of parole without notice not only generally risks erroneously depriving noncitizens of their right to be free from imprisonment, but that in Petitioner's case, the risk has already fully manifested. (Pet. ¶ 71). Petitioner points out that this process lacks common protections like notice, an opportunity to be heard, and an opportunity to contest any reasoning given. (*Id.* ¶ 67). As this Court has previously held, a pre-deprivation hearing would significantly guard against this risk. *Fanfan*, 2025 WL 3563739, at *3 (citing *Pablo Sequen*, 2025 WL 2935630, at *11). This is because it would give both parties "an opportunity to determine whether there is any valid basis for [the noncitizen's] detention," which "is permissible only to prevent flight or protect against danger to the community." *Pinchi*, 792 F. Supp. 3d at 1035. As Petitioner's initial parole indicates he was not considered a flight risk or a danger to the

community, and Respondents do not point to any material, changed circumstances; a pre-deprivation hearing in this case would likely have prevented the erroneous deprivation of Petitioner's rights. (Pet. Ex. F at 8 ("The subject does not appear to be a threat to national security, border security, or public safety")); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom.*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). This factor therefore also weighs in favor of Petitioner.

### 3. Government's Interest

The third *Mathews* factor considers the Government's interest, including any fiscal or administrative burdens imposed by additional procedural safeguards. Here, Respondents do not address the *Mathews* factors, or even Petitioner's due process argument. However, where there is no evidence of material, changed circumstances, courts have found the Government's interest in re-detention to be low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *see, e.g.*, *Doe v. Chestnut*, No. 1:25-cv-01372-CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025). This factor, too, weighs in favor of Petitioner.

The Court finds that all three *Mathews* factors weigh in favor of Petitioner. Therefore, the Government denied Petitioner's due process rights when there was not "a decision by an appropriate official on whether the purpose of parole [had] been served; [] written notice of the reasons for the termination; and [] an opportunity to rebut the reasons given." *Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025).[2]

---

[2] In light of this determination, the Court declines to address Petitioner's arguments concerning the INA, APA, and *Bautista* class.

### C. Respondents' Arguments

Respondents did not address the *Mathews* factors nor Petitioner's due process claim. Instead, they contend that Petitioner is mandatorily detained under 8 U.S.C. § 1225. (Return 10–15). Petitioner contests this statutory classification. (Pet. 10–17; Traverse 9–14). Regardless, the Government's "discretion to incarcerate non-citizens is always constrained by the requirements of due process" and any claims that the process given was "constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Hernandez v. Sessions*, 872 F.3d 976, 981, 987 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). Therefore, the Court declines to address Respondents' arguments.

### IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition. Specifically, the Court **ORDERS** Respondents to release Petitioner from custody within 48 hours of this Order's filing. Respondents shall not re-detain Petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which Respondents must prove that there are material, changed circumstances related to flight risk or danger to the community that warrant Petitioner's re-detention. The Parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: December 22, 2025

Hon. Dana M. Sabraw
United States District Judge